UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| BRYAN GUZMAN-MICHEL,<br><br>    Plaintiff,<br><br>        v.<br><br>JOHN GALIPEAU, ROBERT CARTER,<br>and ADAM LIEDY,<br><br>    Defendants. | CAUSE NO. 3:23-CV-146-JD-MGG |

## OPINION AND ORDER

Bryan Guzman-Michel, a prisoner without a lawyer, filed a complaint about the conditions of confinement at Westville Correctional Facility. ECF 15. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Guzman-Michel alleges the conditions at Westville have fallen below constitutional standards. He was first housed in 7 Dorm from January 2021 through September 2021 until he was moved to 4 Dorm. He focuses on the inadequate ventilation system, temperature regulation, shower access, bathroom sanitation, water

quality and pest control throughout the prison. The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citations omitted). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id.* (citations omitted). Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). On the subjective prong, the prisoner must show the defendant acted with deliberate indifference to the inmate's health or safety. *Farmer*, 511 U.S. at 834. As the court of appeals has explained:

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal citations and quotation marks omitted); *see also Reed v. McBride*, 178 F.3d 849, 855 (7th Cir. 1999) (where inmate complained about severe deprivations but was ignored, he established a "prototypical case of deliberate indifference.").

Michel-Guzman alleges the ventilation system is inadequate and leads to several issues throughout the prison. There are no exhaust fans in the bathrooms to remove the moisture, resulting in an overgrowth of mold and mildew. He alleges the bathroom ceiling is covered with green and black mold; every couple of months when the mold gets really bad, inmates use power washers to clean it, but the mold returns. The amount of mold worsens Michel-Guzman's asthma, causes his eyes and throat to burn, and creates sinus issues.

Michael-Guzman alleges the poor ventilation increases the risk that illnesses, such as COVID-19 or influenza, will spread because fresh air is not circulated. The poor ventilation also increases the inmates' exposure to secondhand smoke from "toon"—a new drug that many inmates smoke. He alleges this drug is so dangerous that inmates have died from just a few puffs, and the lack of exhaust fans allows the smoke to accumulate in the dorms. He contends that the internal ventilation system has never been cleaned, and it circulates asbestos throughout the prison.

The poor ventilation also results in extreme heat in the summer. With no exhaust fans to displace the hot, humid air, it remains trapped inside the dorm. Michel-Guzman alleges the dorm can get up to 111 degrees in the summer. The windows are in disrepair and some of them don't close at all, allowing birds, bugs, spiders, and mosquitos to enter. The bugs, in particular are attracted to the spotlights surrounding the prison, and in the summer months Guzman-Michel is bitten multiple times a night by mosquitoes.

The temperature extremes exists in the winter, too. Because the windows do not seal properly, cold air comes in through the gaps. Once, Michel-Guzman woke up with

3

snow on his bed because the glass in his cell window was missing and was not replaced. Michel-Guzman alleges that once, when it was cold enough that the inmates were supposed to receive an extra blanket, he saw the sergeants fabricate the temperature readings by pointing the temperature gun at food that had just been heated up in the microwave. Guzman-Michel resorts to heating up water bottles in the microwave to stay warm. Warden Galipeau told Guzman-Michel directly that he "wouldn't be spending thousands of dollars just to heat the dorm up for a few days." ECF 15 at 6-7.

Michel-Guzman alleges the bathrooms in his current dorm, 4 Dorm, are inadequate and unsanitary. He contends there is only one working shower for the approximately 100 people living there, and that shower frequently malfunctions. Once a week, the inmates in the dorm are given cleaning supplies to clean the bathroom. When the cleaning supplies are sprayed in the showers and on the floor, hundreds of tiny maggot-like worms emerge from the grout in the shower and from under the sinks.

And, finally, Michel-Guzman alleges that the water at Westville is unsafe to drink. According to him, staff have been instructed not to drink the water, but it is still provided to the prisoners. Their only alternative is to buy bottles of water from the commissary.

Guzman-Michel sues Maintenance Supervisor Adam Liedy for not addressing the many problems in the facility in a timely manner. He also alleges Warden John Galipeau and Indiana Department of Correction Commissioner Robert Carter toured the facility and saw the prison-wide deficiencies but took no action to remedy them.

4

Guzman-Michel will be permitted to proceed against Maintenance Supervisor Liedy, Warden Galipeau, and Commissioner Carter for turning a blind eye to these pervasive infrastructure problems. *See Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir 2019) (Supervisory staff can be held liable for a constitutional violation if they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye."). Additionally, Guzman-Michel will be permitted to proceed against Warden Galipeau in his official capacity for injunctive relief because he alleges these unconstitutional conditions are still ongoing. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) ("[T]he warden . . . is a proper defendant [for] injunctive relief [and is] responsible for ensuring that any injunctive relief is carried out.").

But Guzman-Michel may not proceed against Indiana Governor Eric Holcomb. There are no allegations that Governor Holcomb was aware of the conditions at Westville. The complaint seeks to hold him responsible based on his position as governor. There is no supervisory liability under 42 U.S.C. § 1983; individual liability requires personal involvement in the alleged constitutional violation. *See Whitfield v. Spiller*, 76 F.4th 698, 706 (7th Cir. 2023). "Only persons who cause or participate in the violations are responsible." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). Governor Holcomb will be dismissed.

For these reasons, the court:

(1) GRANTS Bryan Guzman-Michel leave to proceed against Maintenance Supervisor Adam Liedy, Warden John Galipeau, and Commissioner Robert Carter in

their individual capacities for compensatory and punitive damages for deliberate indifference to his conditions of confinement by (a) maintaining an inadequate ventilation and exhaust system, which causes exposure to mold, asbestos, secondhand smoke, airborne illnesses, and high temperatures in the summer; (b) failing to maintain the windows to prevent extreme temperatures in the winter and to prevent mosquito infestations in the summer; (c) providing contaminated water; and (d) providing inadequate, unsanitary bathrooms in violation of the Eighth Amendment;

(2) GRANTS Bryan Guzman-Michel leave to proceed against Warden John Galipeau in his official capacity for injunctive relief in the form of conditions of confinement that are not inconsistent with the Eighth Amendment;

(3) DISMISSES all other claims;

(4) DISMISSES Eric Holcomb;

(5) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Adam Liedy, John Galipeau, and Robert Carter at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 15);

(6) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(7) ORDERS, under 42 U.S.C. § 1997e(g)(2), Adam Liedy, John Galipeau, and Robert Carter to respond, as provided for in the Federal Rules of Civil Procedure and

N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on March 19, 2024

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT